IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| SOUTH EAST CARRIERS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO. |
| v. ) | |
| ) | 5:05-CV-146 (WDO) |
| ATLANTA SOUTH 75, INC. ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

COMES NOW Plaintiff, South East Carriers, Inc., to file its response to Defendant's Motion for Summary Judgment and states as follows:

**STATEMENT OF FACTS**

Plaintiff, South East Carriers, Inc., is an over the road, long haul trucking division. Plaintiff runs approximately one hundred (100) trucks nationwide for various carriers pulling forty eight foot (48') and fifty three foot (53') driving trailers and full truck load. (Deposition of Kevin Height, at page 12). Since 2001, Charles Howell has been employed by Plaintiff as a truck driver. (Deposition of Charles Howell at page 56). Mr. Howell was assigned to a route for the transport of cargo from Lebanon, Tennessee to Medley, Florida on a weekly basis. (*Id.* at page 121). On January 9, 2004, Mr. Howell

traveled to Famous Footwear in Lebanon, Tennessee to retrieve a trailer of cargo[1] to be delivered to U.S. Carriers in Medley, Florida. (*Id.* at page 17). When Mr. Howell arrived to retrieve the trailer, the trailer's doors were sealed by Famous Footwear, with the use of a lock which contained a logo for Famous Footwear. (*Id.* at page 60). Mr. Howell requested and executed the bill of lading for the cargo and then hitched the trailer to his tractor. (*Id.*). Before exiting the location where the route originated, Mr. Howell was stopped by a security guard. (*Id.*).

The guard reviewed the bill of lading, cut the Famous Footwear lock, checked the cargo and then resealed the trailer doors with a new lock. (*Id.*). As Mr. Howell was entering the yard to retrieve his load, he saw his high school friend, Edwin McNabb. (*Id.* at page 122). Mr. McNabb is employed by Plaintiff as a truck driver. (*Id.* at page 121). Additionally, Mr. McNabb is assigned to carry cargo to Medley, Florida on a weekly basis. Mr. Howell and Mr. McNabb made arrangements to trail one another to their final destination, Medley, Florida. (*Id.* at page 122).

Mr. Howell and Mr. McNabb left the facility in Lebanon, Tennessee at approximately 1:00 p.m. on January 9, 2004, and then they began traveling Southbound on Interstate 75. (*Id.* at page 117). After driving approximately 5-6 hours, Mr. Howell began experiencing problems with his tractor. (*Id.* at page 119). Mr. Howell pulled over to the side of the road at mile marker 212 and then discovered that the turbo for the tractor had blown. Mr. Howell contacted Plaintiff's dispatcher, Drew Richards, to inform

---

[1] 944 cases of cargo were supposed to be delivered to U.S. Carriers for Famous Footwear.

him about the mechanical issues he was experiencing.  (*Id.* at pages 133-135).  Mr. Richards instructed Mr. Howell to standby while he attempted to locate a place that could repair the tractor.  (*Id.*).  Soon thereafter, Mr. Richards informed Mr. Howell that a wrecker would not be available until the next day, January 10, 2004.  (*Id.* at page 135). Due to the weather climate, Mr. Howell and Mr. McNabb slept in Mr. McNabb's tractor on the side of the road because Mr. McNabb was able to run the engine for his tractor to provide heat through the night.  (*Id.* at page 138).

Mr. Richards contacted Defendant's repair center and confirmed that Defendant's facility could repair Mr. Howell's tractor and that it could provide a secure area for his trailer.  (Deposition of Drew Richards, at page 72). Defendant's employee confirmed that a service bay was available and that the lot for the trailer was fenced and secured.  (*Id.*)

On January 10, 2004, Mr. Richards informed Mr. Howell that the TA Service Center was located at exit 201 and that a wrecker would be dispatched to transport his tractor to the repair shop.  (Deposition of Charles Howell, at page 141). Further, Mr. Richards instructed Mr. Howell to tell Mr. McNabb to travel to Defendant's repair shop, drop his trailer, bobtail back to the loss location to retrieve Mr. Howell's trailer and then drop Mr. Howell's trailer at Defendant's repair center.  (*Id.* at page 144). Mr. McNabb completed the tasks as instructed.  (*Id.* and Deposition of Edwin McNabb, at pages 55-56). When Mr. Howell and Mr. McNabb arrived to the service center to drop Mr. Howell's trailer, Mr. Howell inquired with Defendant's employee where the trailer could be dropped.  (Deposition of Charles Howell, at pages 145-147).  Mr. Howell was instructed to drop the trailer in the rear parking lot of Defendant's facility.  (*Id.*)

The wrecker retrieved the tractor from the loss site, delivered it to Defendant's service center and dropped it in one of the four service bays. (*Id.* at pages 164-165). Before towing the tractor, the wrecker removed the drive shaft from the tractor which made it inoperable. (*Id.* at page 167). Nonetheless, the tractor could not be driven after the turbo blew. (Deposition of Edwin McNabb, at page 46). Therefore, the trailer could not be reattached to the tractor when they reached the service center because of Mr. Howell's inability to drive the vehicle. (*Id.* at page 167).

Mr. McNabb dropped Mr. Howell's trailer, retrieved his trailer from the lot and then completed his route to Medley, Florida. ((*Id.* at page 73). Mr. Howell spoke with Defendant's repair center and he was informed that the part for his tractor was not available and that the tractor would not be repaired until Monday, January 12, 2004. (*Id.* at page 172).

Mr. Howell was transported to a Days Inn in Jackson, Georgia by one Defendant's employees. (*Id.* at page 170). Before leaving, the keys for the tractor were left with the service department to allow Defendant full access to the tractor during the repairs. (Deposition of Kevin Ryan at pages 94-95). On January 11, 2004, Mr. Howell contacted Defendant's service center, on two occasions, to request the status of his trailer. (*Id.* at pages 180-181). Each time, he was assured that his trailer was in the rear parking lot. (*Id.*)

On January 12, 2004, Mr. Howell contacted Defendant's repair center and requested a ride from the Motel to the repair center. (*Id.* at page 83). When Mr. Howell arrived to Defendant's repair center he inquired about his tractor and he was told that the

repairs were not complete.  (*Id.*) Therefore, he walked to the rear of the center to examine his trailer which is when he discovered that the trailer was stolen.  (*Id.* at pages 83-84).

Mr. Howell asked Defendant's employees if they moved his trailer and they told him that they did not have a reason to move it.  (*Id.* page 183). Mr. Howell contacted Drew Richards to informed him of the theft.  Mr. Richards contacted the local sheriff's department to report the theft. (*Id.*  at pages 183-184).

Although Plaintiff was informed that the trailer would be located in a secured area[2], after the loss, Plaintiff discovered that the security guard for the facility is only required to work from Tuesday through Sunday mornings from 8:00 p.m. to 4:00 or 5:00 a.m.  (Deposition of Ricky Jones, at page 29). The guard is not required to watch the monitors for the surveillance cameras and he has no knowledge regarding the locations of the cameras for the facility. (*Id.* at page 75). Further, Mr. Jones is the only guard for the facility. (*Id.* at page 125).  Defendant failed to employ a person to guard the facility on Sundays and Mondays.  (*Id.*)  Mr. Jones tours the facility to watch the trucks and to look for unusual events at least twice an hour.  (*Id.* at 85) Generally, Mr. Jones would make a note of trailers that are parked in the lot for more than one day.  (*Id.*) That was not done in this case because Mr. Jones was not on duty on  Sunday, January 11, 2004.  (*Id.* at page 29). There have been over a hundred (100) incidents (many involving thefts) that have occurred at Defendant's facility which have been reported to the Butts' County

---

[2] Defendant's facility is surrounded by an eight (8) foot fence, it advertises twenty four (24) surveillance, employs a security guard, Ricky Jones, and has working cameras throughout the facility. (Deposition of Ricky Jones, at page 25 and Deposition of Drew Richards at pages 72-73). Based on the safety measures reported to Plaintiff, prior to dropping its trailer, Plaintiff relied on Defendant to protect its property while it was in its possession. (Deposition of Drew Richards, at page 75).

Sheriff's Department. ((*Id.* at 94). However, Mr. Jones knows of only a few. (*Id.* at page 100).

After the loss, Defendant did not prepare an incident report, did not call the police, and it did not investigate this loss. (*Id.* at pages 104-107). However, Defendant, instead of creating a better security system, (i.e. more guards and employ individuals to watch the surveillance cameras' monitors) created a policy for drivers to sign a release to transfer liability from the Defendant to the drivers in the event of a loss.

The trailer was found two weeks later in a truck stop north of Jackson, Georgia. (Deposition of Keith Height, at pages 140-141). However, the cargo was missing from the trailer. (*Id.*) Consequently, Plaintiff seeks the recovery of its damages from Defendant for its breach of ordinary care as a bailee. Now, Defendant seeks summary judgment, but it has failed to meet its burden to establish that there are no genuine issues of material facts in dispute in this case. Plaintiff respectfully requests that the Court deny Defendant's motion and allow this matter to be presented to the Jury.

## **STANDARD OF REVIEW**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. Rule Civ. Pro. 56(c). Material facts are those facts that might affect the outcome of the lawsuit. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material facts is "genuine" if a reasonable jury could return a verdict for the nonmoving party. *See J.G.B. Enters., Inc. v. United States*,

921 F. Supp. 91, 95 (N.D.N.Y. 1996). On summary judgment, all reasonable inferences drawn from the evidence must be viewed in a light most favorable to the party opposing the motion. *Matsushita Electric Industrial Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 586-88 (1986).

The purpose of a summary judgment motion is to have the Court decide whether it can render a judgment on the merits without the need for a trial. *See Foucher v. First Vermont Bank and Trust Co.*, 821 F. Supp. 916, 922 (D.Vt. 1993). When the parties have requested a jury trial, as in this case, the Court may only enter summary judgment if it determines that there are no factual issues for a jury to decide at trial. *See Dumont v. Administrative Officer*, 915 F. Supp. 671, 674 (S.D.N.Y. 1996).

Defendant, as the moving party, has the initial burden of demonstrating that it is entitled to summary judgment, that there are no material issues of fact, and that it is entitled to judgment as a matter of law. *Clark v. Coats and Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The moving party must make such a showing even where it would not have the burden of persuasion at trial. *See Williams v. Richmond County, GA.*, 804 F. Supp. 1561, 1564 (S.D.Ga. 1992).

In this case, Defendant has not met its initial burden of demonstrating that it is entitled to summary judgment, that there are no material issues in dispute, or that it is entitled to a judgment as a matter of law.

## ARGUMENT AND CITATION OF AUTHORITY

**A.     Plaintiff And Defendant Created A Bailment When Defendant Authorized The Delivery Of Plaintiff's Tractor And Trailer To Defendant's Service Center For Repair.**

OCGA § 44-12-40 defines a bailment as: "a delivery of goods or property upon a contract, express or implied, to carry out the execution of a special object beneficial either to the bailor or bailee or both and to dispose of the property in conformity with the purpose of the trust."  *South Georgia Pecan Co. v. Alimenta Processing Corp*, 195 Ga. App. 688, 394 S.E.2d 545 (1990).

A bailment involves either an express or implied mutual agreement to safe keep property between the owner and its custodian either gratuitously or for some consideration.  "That is, a bailment relationship is created when one party is involved in an undertaking ... to safeguard the personal property of another and exercises complete dominion at all times over the property."  Further, when a bailment is created, the bailee becomes liable for damage to the property for failure to exercise the requisite care to safeguard it.   Under the law, then, whether a bailment exists depends upon the relationship between the owner of the property and the possessor of the property as to the disposition of the property.  *Bohannon v. State,* 251 Ga.App. 771, 555 S.E.2d 112, (2001).  Nonetheless, the issue of whether a bailment has been establish by the parties is a question for the trier of fact.  In this case, the jury.  *Mitzner v. Hyman,* 175 Ga.App. 311, 333 S.E.2d 182  (1985).

8

Generally, one creates a bailment and becomes a bailor by renting, leasing, or lending to, or **storing personal property with, another**. *Apperson v. Belton Ind., Inc. v. Yangming Marine Transp. Corp.,* 1996 WL 906349, (S.D. GA 1996) [Emphasis added]. In contrast, no bailment arises in a storage context, for example, where the owner retains the right to remove the stored article at will, without the knowledge of the person in charge of the premises. *Mossie v. Pilgrim Self-Service Storage,* 150 Ga.App. 715, 258 S.E.2d 548 (1979).

Where the object of the bailment is beneficial to both bailor and bailee, the degree of diligence required of the bailee is ordinary care. *Merchants National Bank v. Guilmartin*, 88 Ga. 797, 799, 15 S.E. 831 (1892); *Renfroe v. Fouche*, 26 Ga.App. 340(2), 106 S.E. 303 (1921); *Goodyear Clearwater Mills v. Wheeler*, 77 Ga.App. 570, 578(5), 49 S.E.2d 184 (1948).  See also, *Davidson v. Ramsby,* 133 Ga. App. 128, 210 S.E.2d 245 (1974) and *4WD Parts Center, Inc. v. Mackendrick*, 260 Ga.App. 340, 579 S.E.2d 772 (2003).

Because a bailee is bound to use ordinary care and diligence to protect the thing bailed, *see* O.C.G.A § 44-12-43, a presumption of negligence arises where possession is shown in the bailee at the time of damage to the property.  See OCGA § 44-12-44; *United States Security Whse. v. Brooks*, 115 Ga.App. 834(3), 156 S.E.2d 217 (1967). The burden then is on the bailee to prove that the injury to the property was not occasioned by negligence on the bailee's part.  See *Jet Air v. Epps Air Svc*., 194 Ga.App. 829, 830(1), 392 S.E.2d 245 (1990).  In order to rebut this evidentiary presumption, the

bailee must negate every inference of negligence on its part, as the presumption in itself is sufficient to support a verdict in favor of the bailor, *Camp v. T.E. Cline, Inc.*, 141 Ga.App. 328, 329(1), 233 S.E.2d 280 (1977); *Red-Cross Laundry v. Tuten*, 31 Ga.App. 689(2), 121 S.E. 865 (1924), and it is only after the bailee has met its burden of proof by showing it exercised the required standard of diligence that the burden of going forward with the evidence shifts back to the bailor, who then has the burden of producing evidence to show negligence on the part of the bailee.  See  *Rhodes v. Duarte*, 142 Ga.App. 885, 237 S.E.2d 212 (1977) and *Scott v. Purser Truck Sales, Inc.,* 198 Ga.App. 611, 402 S.E.2d 354 (1991).

In this case, Defendant contends that a bailment was not established between the parties and that Plaintiff was responsible for its tractor and trailer after it was delivered to Defendant's facility for repair.  Plaintiff submits that this conclusion is erroneous.

The case in point for this civil action is *Stovall Tire & Marine, Inc. v. Fowler,* 135 Ga.App. 26, 217 S.E.2d 367 (1975).  In *Fowler,* a boat owner brought an action against the boat repair company for damages sustained when the boat sank while in the repair company's slip.  Specifically, the plaintiff took his boat to defendant's repair shop in Atlanta on two separate occasions for repair.  Each time the boat was returned to the plaintiff, for use, the engine failed and the boat was returned to the defendant for repair. On the third occasion, during the latter part of May, plaintiff was using the boat in Lake Lanier when the engine failed. The plaintiff contacted the defendant and he was instructed by defendant's chief mechanic to drop the boat at one of defendant's slips located at Lake Lanier instead of returning the boat to Atlanta for repair.  The plaintiff

10

dropped the boat at defendant's slip, as instructed, and then contacted the defendant to inform it that the boat was at the designated location and ready for the repairs.

The plaintiff contacted the defendant on several occasions to find out the status of the repairs. In mid-July, plaintiff contacted the defendant, again, to find out the status of the repairs and he was informed that his boat sank as the result of a severe storm. In the civil action to recover plaintiff's damages, defendant attempted to argue that there was no bailment. However, the Court held that the delivery of the boat to the defendant's slip for repairs created a bailment. Further, the defendant had the responsibility to show proper diligence to protect plaintiff's property, which included checking on the boat to make sure it was properly tied to the slip.

In this case, Plaintiff contacted the Defendant and obtained authorization to deliver its tractor and trailer to Defendant's service center for repair and storage, respectively. When Mr. Howell arrived to Defendant's service center on January 9, 2004, he was instructed to place the tractor in one of the four service bays and to drop the trailer in the rear parking lot of Defendant's facility. Defendant attempts to argue that its employees did not have authorization to allow Plaintiff to leave its trailer on its premises and that the Defendant does not have any record of receiving Plaintiff's tractor or trailer until Monday, January 12, 2006. However, documentation admitted throughout discovery, in addition to the direct testimony, shows otherwise.

For example, Plaintiff has produced a receipt from the wrecker, dated January 10, 2004, which evidences that Plaintiff's tractor was dropped in one of four service bay's at Defendant's service center on the same day. (See Exhibit "A"). Further, Mr. Howell has

11

documentation to prove that, as a result of Defendant's failure to fix the tractor on January 10, 2004, he was a customer at the Day's Inn Hotel in Jackson, GA from January 10, 2004 to January 12, 2004. (See Exhibit "B"). Additionally, after reporting the theft of his trailer, Mr. Howell remained at Defendant's service center where he ate dinner, free of charge. (See Exhibit " C") All of the documentation corroborates Plaintiff's witnesses' testimony which states that the tractor and trailer were dropped at Defendant's service center in Jackson, Georgia on January 10, 2004, at Defendant's direction and with Defendant's permission.

In regard to exclusive possession and control, the Defendant was informed and agreed that the Plaintiff's tractor's turbo was blown and that the repairs would not be completed until Monday, January 12, 2004. In order to perform its work, in Mr. Howell's absence, the Defendant needed Plaintiff's keys to the tractor. Mr. Howell no longer had transportation so he relied on one of Defendant's employees to transport him to the Days Inn Hotel. As a result, the Plaintiff did not have access or any opportunity to remove the tractor or trailer from Defendant's premises. The delivery of the tractor and trailer and Defendant's exclusive possession from January 10, 2004 to January 12, 2004 created a bailment in this case. Therefore, Defendant had a duty to protect Plaintiff's property from harm.

Defendant has made several references to a kingpin lock and contends that Plaintiff's failure to use the lock was the cause of this loss. As in *Fowler,* when the bailment was created, the Defendant had a duty to diligently protect Plaintiff's property. Defendant knew that the trailer would remain, on site, for two days, and that it was not

and could not be attached to the tractor. In addition to providing the proper security for the lot where the trailer was stored, the Defendant had access (Defendant admits that it sales kingpin locks) and an opportunity to install a kingpin lock onto the trailer or to recommend such use to the Plaintiff[3]. When the bailment was established, it was Defendant's responsibility to take all reasonable measures to protect the trailer from foreseeable harm. That was not done in this case.

Further, the Defendant advertises, on site, that its property is under a 24 hour surveillance. However, Defendant employs one security guard, Ricky Jones, to monitor its property from Tuesday to Sunday morning of each week. Mr. Jones' weekly schedule is from 8:00 p.m. to 4:00 or 5:00 a.m. During his shift, Mr. Jones is responsible for touring the property to watch the trucks and to look for unusual persons or acts at least twice per hour, but the one security guard was not on-duty when Defendant authorized Plaintiff to leave its trailer on Defendant's lot. The Defendant installed security cameras throughout the property; however, no one, including Mr. Jones, is responsible for watching the monitors or to replay the tapes on a regular basis. In fact, Mr. Jones does not know the location of all of the cameras at the property. Although the Defendant is aware of all of the problems that occur at its truck stop[4], if not properly secured, it represented to Plaintiff that its trailer would be stored in a secured area. Defendant's

---

[3] The Plaintiff does not have a policy that requires its drivers to use kingpin locks.
[4] Over 100 incident reports for matters that occurred at Defendant's facility (mostly thefts) have been filed with the Butts County Sheriff's Department.

security measures failed to meet the standard of ordinary care and they did not protect Plaintiff's property.

Defendant also contends that it should not be responsible for this loss because it did not know the exact contents of Plaintiff's trailer. However, the Courts have held that a Defendant can be held accountable for the loss of personal property from a vehicle if the articles taken can be reasonably expected to be contained in the vehicle. Furthermore, such issue is also a question for the jury to resolve. *Davidson v. Ramsby*, 133 Ga.App. 128, 210 S.E.2d 245 (1974)

The Defendant is a truck stop and a truck repair center. Defendant knows that its customers are hauling cargo regardless of value. Defendant knew that Mr. Howell's tractor and trailer were stored at its facility after breaking down while driving on the interstate. Mr. Howell contacted Defendant on several occasions, while staying at the Days Inn, to check on the status of his trailer. Although Defendant did not know the name and type of the cargo contained on Plaintiff's trailer, it knew that it was filled with cargo. Defendant had reasonable notice that Plaintiff's trailer contained cargo. Therefore, it should be held responsible for Plaintiff's damages incurred as a result of the loss of the cargo. In spite of the above facts, the issue of reasonable notice to Defendant regarding the contents of its trailer is not ripe for summary judgment and it should be left for a jury to decide.

The Plaintiff has met its burden of showing the establishment of a bailment and traveled the extra mile of presenting evidence of Defendant's failure to exercise ordinary care for the protection of Plaintiff's property. However, Defendant has not met its burden

14

of rebutting the presumption of its negligence in this matter.  Plaintiff submits that Defendant's request for summary judgment should be denied.

**B.     Defendant's Negligence Caused This Loss.**

Plaintiff agrees that "[i]n Georgia, the essential elements of a cause of action for negligence are:  (1) a legal duty;  (2) a breach of this duty;  (3) an injury;  and (4) a causal connection between the breach and the injury."  (Citation omitted.)  *Vaughan v. Glymph*, 241 Ga.App. 346, 348, 526 S.E.2d 357 (1999).  Defendant seeks summary judgment on the basis of causation   However, when issues of proximate cause and foreseeability of intervening acts are not plain and undisputed, the trial court cannot make such determination as a matter of law.  *Olympia Services, Inc. v. Sherwin Williams Co.,* 224 Ga.App. 437, 480 S.E.2d 883 (1997).  In this case, there are sufficient issues of material facts in dispute regarding this issue.

Defendant contends that the theft of the trailer is an intervening act which severs its negligence from the cause of this loss.  To the contrary, at the time of this loss the Defendant could foresee that the theft of Plaintiff's trailer or any property at its location could occur.  The evidence of such knowledge is Defendant's reporting of many incidents of theft to the Butts County Sheriff's Office, the current security measures implemented for the protection of its property and its current rules and regulations against driver's that attempt to drop trailers on its property.  As mentioned above, the Defendant alleges that it has 24 hour surveillance for its property, the location is surrounded by an eight (8) foot fence, surveillance cameras are strategically placed throughout the facility, and Defendant has one, on-staff, security guard that is suppose to tour the grounds from 8:00

15

p.m. to 5:00 a.m., from Tuesday to Sunday mornings of each week. Furthermore, Defendant has implemented a policy, which requires the drivers to sign a release that shifts any risk of loss to the driver and its company in the event of the theft or damage to its dropped trailer while in Defendant's possession. If theft was not a problem at Defendant's facility, the security measures would not be required.

Defendant failed to use the requisite measure of ordinary care to prevent this loss and it should be held accountable for Plaintiff's damages. The bailment established by the delivery of the tractor and trailer created a duty of ordinary care. *Merchants National Bank v. Guilmartin*, 88 Ga. 797, 799, 15 S.E. 831 (1892); *Renfroe v. Fouche*, 26 Ga.App. 340(2), 106 S.E. 303 (1921); *Goodyear Clearwater Mills v. Wheeler*, 77 Ga.App. 570, 578(5), 49 S.E.2d 184 (1948). See also, *Davidson v. Ramsby,* 133 Ga. App. 128, 210 S.E.2d 245 (1974) and *4WD Parts Center, Inc. v. Mackendrick*, 260 Ga.App. 340, 579 S.E.2d 772 (2003).. Defendant's failure to provide adequate security for Plaintiff's property, for which it maintained exclusive possession and control, is a breach of its duty as a bailee. Defendant's breach of duty caused Plaintiff to incur damages as the result of the loss of 944 cases of product that were stored on Plaintiff's trailer. Plaintiff has met its burden of proving each element of negligence in this case. Notwithstanding, there are many facts in dispute as they pertain to the issue of causation and the foreseeability of the intervening act and the matters should be resolved by the jury.

## **CONCLUSION**

For the foregoing reasons, Defendant has not met its initial burden of demonstrating that it is entitled to summary judgment, that there are no material issues in dispute, or that it is entitled to a judgment as a matter of law.  Plaintiff requests that the Court deny Defendant's request for summary judgment.

Respectfully submitted.

*s/ Karen D. Fultz*_____
Karen D. Fultz, Esq.
Georgia Bar No. 266973
COZEN AND O'CONNOR
SunTrust Plaza, Suite 2200
303 Peachtree St., N.E.
Atlanta, Georgia  30308
(404) 572-2000
(404) 572-2199 (facsimile)
kfultz@cozen.com
