IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| **SOUTH EAST CARRIERS, INC.,** | : | |
| **Plaintiff** | : | |
| v. | : | 5:05-CV-146 (WDO) |
| **ATLANTA SOUTH 75, INC.,** | : | |
| **Defendant** | : | |

**ORDER**

Defendant Atlanta South owns TA Travel Center, a full service truck and auto travel center located in Jackson, Georgia on Interstate 75. On Friday, January 9, 2004, Charles Howell, an employee of Plaintiff South East Carriers, was driving a load of 944 pairs of shoes from Tennessee to Florida and broke down on I-75 near Atlanta South. Edwin McNabb, another South East driver, was delivering a separate load to Florida along the same route. Howell contacted McNabb on the radio to inform him he was broken down. After Howell stopped on the side of I-75, he contacted South East's dispatcher Drew Richards. Because South East knew Howell was carrying a "high profile" load, meaning it had "great monetary value," Richards contacted various individuals in the hopes of finding a location where the tractor could be repaired. That night, McNabb and Howell parked their tractor-trailers on the side of the exit ramp and slept in McNabb's tractor-trailer, due to Howell not being able to crank or run his tractor. The next morning, Richards instructed Howell to tell

1

McNabb to drop McNabb's trailer at the TA Service center and then retrieve Howell's trailer with McNabb's tractor. Howell testified in his deposition that he asked an unidentified employee of TA where to park the trailers and the employee told them to carry them around to the back and "drop them" in the truck parking lot. Howell left the keys to the tractor with a TA employee so it could be moved after the repair was complete. The trailer did not require any type of repairs and Plaintiff South East never paid any type of fee to Defendant Atlanta South for storing or parking the trailer. Howell did not receive any receipt, claim check or other type of documentation when he left the trailer in the parking lot. Pursuant to South East's policy, Howell did not disclose to anyone the contents of his trailer for security reasons. South East arranged for a wrecker to tow Howell's tractor to TA to be repaired. A TA employee informed Howell that the parts needed would have to be ordered and the repairs would not be completed until the following Monday. Howell then contacted the dispatcher Richards to discuss getting a hotel room to await the repairs. Howell obtained a room in a nearby town for Saturday and Sunday night and McNabb resumed his trip to Florida. Howell called TA some time during the weekend to check on his trailer and confirmed it was still in the parking lot. On Monday morning, Howell contacted TA to obtain transportation back to TA to retrieve his tractor. An unidentified employee of TA drove to the motel, picked up Howell and drove him to TA. When Howell returned to TA, he discovered his trailer was missing.

      Howell immediately contacted South East to determine if South East had instructed

someone else to pick up the trailer and was informed they did not. South East contacted the Butts County Sheriff's Department and reported the trailer missing. While it appears the deputy spoke to Howell and someone at South East, he never spoke to the owners of Atlanta South about the incident and it is not clear whether the deputy even spoke to any of the Atlanta South employees on duty that day. The trailer was recovered empty two weeks later at another truck stop north of Jackson, Georgia and the contents have never been recovered.

Defendant Atlanta South employs a security guard, Ricky Jones, who walks around the entire premises during his shifts and walks through the TA travel center. Jones works from 8:00 p.m. to approximately 4:00 a.m. Monday through Saturday and does not work on Sundays. He tours the property once an hour during his shift.

Plaintiff South East brought this action against Defendant Atlanta South to recover the value of the shoes lost alleging a bailment and a negligence claim. Defendant moved for summary judgment on both claims. Defendant contends the Plaintiff was not authorized to drop the trailer in the parking lot because Defendant's policy since September 11, 2001 has been to *not* allow drivers to park their trailers unattended. TA's service bay is large enough to hold both the tractor and trailer and Defendant contends this is what Howell should have done. Plaintiff counters that Defendant should have made the parking lot more secure and that prior to Howell parking his trailer in the lot Richards had been told by an unidentified employee of TA that the area was "secure" and had a fenced yard. Defendant contends that Howell and McNabb were aware from their personal observation that the area was not fenced

and there was no gate obstructing anyone from going in or near the tractors and trailers. TA is accessible from either of two driveways marked "entrance" and "exit." While South East had never used TA for a repair, several individuals testified that *no* truck stops have guarded, fenced parking lots for tractor-trailer parking. Rather, the only guarded, "secure" areas available are in authorized dealers' lots. The Court must therefore determine whether based on these facts Defendant is liable to Plaintiff under a bailment and/or negligence claim.

### *Summary Judgment Standard of Review*

Summary Judgment is appropriate when the pleadings, depositions and affidavits submitted by the parties show no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The Supreme Court explained the moving party's burden may be discharged "by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). In Celotex, the Court held that summary judgment is appropriate against

> A party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

Id. at 322-23. "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case.

4

The relevant rules of substantive law dictate the materiality of a disputed fact." Chapman v. AI Transport, 229 F.3d 1012, 1023 (11th Cir. 2000). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." Id. (citation omitted).

### *Bailment Claim*

"A bailment is a delivery of goods or property upon a contract, express or implied, to carry out the execution of a special object beneficial either to the bailor or bailee or both and to dispose of the property in conformity with the purpose of the trust." O.C.G.A. § 44-12-40. For a bailment to be created, "there must be an actual or constructive delivery of the goods with actual or constructive possession in the bailee, exclusive and independent of the bailor and all other persons. Delivery, which confers on the bailee an independent and temporarily exclusive possession, is essential to a contract of bailment." Cesaroni v. United States, 624 F. Supp. 613, 620 (S.D. Ga. 1985) (citing O.C.G.A. § 44-12-40) (other citations omitted). "The hire of labor or services is the essence of every bailment in which goods are delivered to another and compensation is paid for the care, attention, or labor bestowed upon them. It includes the contracts of . . . keepers of wharves, mechanics, and all agents in such transactions. In all such cases, the bailee is not only bound to exercise skill in the labor and work bestowed but it is a part of his contract that he shall exercise ordinary care and diligence in keeping and protecting the articles entrusted to him." O.C.G.A. § 44-12-71. Delivery of property can be to a "depository for hire" which means "a depository who

receives or expects a reward or hire for undertaking to keep chattels for another" or to a "naked depository" which means "an undertaking whereby a depository keeps chattels for another gratuitously." O.C.G.A. § 44-12-90.  "For a naked deposit, the depository is responsible only for gross negligence." O.C.G.A. § 44-12-91.  "Depositories for hire are bound to exercise ordinary care and diligence and are liable as in other cases of bailment for hire." O.C.G.A. § 44-12-92.  Because the statutes do not completely answer the question posed in this case - whether a bailment was created so as to impose upon Defendant liability for Plaintiff's loss - the Court must look to cases that have interpreted these provisions.

More than a hundred years ago in Merchants' National Bank of Savannah, the Supreme Court of Georgia addressed the issue of whether, when a bank received from one of its customers a special deposit of valuable securities to be kept for the depositor's accommodation and returned to him on demand, the bank would be held liable for the felonious appropriation of the securities by the cashier to his own use who took the securities while he was on duty in the bank. Merchants' Nat. Bank v. Guilmartin, 15 S.E. 831 (Ga. 1892).  The court held the answer to this question depended "on the nature of the duty assumed by the bank with respect to the deposit.  Such a deposit belongs to the class of bailments termed 'gratuitous,' and the test of the bailee's liability on a loss of the property is to inquire whether he exercised the full amount of diligence which the law exacts as the measure of his duty in keeping the property." Id. at 831-832.  "If the bailment is for the benefit exclusively of the bailee, he must use extraordinary care; if for the mutual benefit of

the parties, ordinary care; and if for the exclusive benefit of the bailor, slight care will suffice." Id. at 832. The court held that the bank was not liable for the loss of a special deposit for which it received no compensation provided it had not been guilty of gross negligence in any respect. Id. (citation omitted). Because the bank had no reason to suspect the cashier of a propensity for theft, the court held the bank was not liable for the loss caused by the cashier's theft. The court explained its findings as follows:

> Pay being the rule, and accommodation the exception, a jury might infer the existence of some secret profit from a multiplicity of favors; but this certainly cannot be an infallible, indisputable inference. Moreover, the possibility of some undisclosed benefit is not enough to render the bailment one for hire; there must be an understanding or arrangement, express or implied, between the parties, whereby the bailee has received, or has a right to expect and demand, something for his benefit. Casual or incidental benefits which he would have to surrender at the will of the bailor do not amount to a consideration. There must be a compensation of some sort actually contemplated in the contract and bargained away by the bailor. The fact that the special depositor is also a general depositor in the bank is hardly sufficient, unless the retention of the general deposit account was stipulated for. So an incidental earning of fees for exchange or collection would not be a consideration, unless the depositor were obliged to allow it. Such benefits as are wholly contingent, and dependent on the pleasure of the depositor, cannot affect or determine the character of the bailment. The custom of the bank to accept special deposits does not absolutely demonstrate a general, still less a universal, receipt of consideration. And there is no reason why a bank should not be allowed to accommodate a customer, or any number of customers, in this way, without raising any equity to estop it from showing the fact of such accommodation.

Id. at 833-834.

Fifty years later, the Georgia Court of Appeals addressed a case where the plaintiff's car was stolen from a fairground parking lot. Southeastern Fair Ass'n v. Ford, 14 S.E.2d 139

7

(Ga. App. 1941). The court held, "It is well settled that the relationship of bailor and bailee does not exist unless there is such a delivery of the property that the alleged bailee acquires an independent and temporarily exclusive possession thereof, and unless there is an actual change of legal as well as physical possession of the property from the bailor to the bailee, 'by virtue of which the bailee is entitled to maintain an action of trover or trespass against one who interferes with his possession, or who negligently destroys the property while in his custody.'" Id. at 140 (citations omitted). The court explained,

> There are numerous Georgia cases which hold that where the operator of an automobile drives it into a regular parking station or lot, operated for profit, and where an attendant thereof takes physical and legal possession of the car and gives to its operator an identifying card which the operator has to return to the attendant before he can regain possession of his car, the relationship of bailor and bailee exists between the parties. But those cases are clearly differentiated from this case. In each of those cases the driver of the car had temporarily relinquished its physical and legal possession to the parking lot attendant, and the latter had the exclusive right of possession, even against the owner or driver of the car, until the identifying card had been returned. In the instant case the undisputed evidence showed that the plaintiff, before entering the defendant's parking lot, paid 25 cents for a ticket which allowed him to park his car there; that there was nothing on the ticket to identify it as the ticket bought by the plaintiff or to identify the plaintiff's car; that the plaintiff drove his car into the parking lot, his ticket was taken up by an employee of the defendant, and he (the plaintiff) parked the car at a place designated by another of the defendant's employees; that no employee of the defendant took physical possession of the car or even touched it; that the plaintiff locked the switch, but not the door, of the car; that the plaintiff then bought a ticket for 50 cents and entered the fair grounds proper through a gate; that when he returned several hours later, about 9:30 o'clock at night, his car had been stolen; that no identifying tag was given the plaintiff by the defendant or any of its agents, and that the plaintiff had the right, and could have exercised it, at any time and without any notice to the defendant, to re-enter his car and drive it out of the parking lot. There are several cases from other states, whose facts are almost identical with those of this case, where the appellate courts held that the

relationship of bailor and bailee did not exist between the parties.

Id. at 140-141.

This long-standing precedent clearly requires a relinquishment of possession and control by the bailor to the bailee such that it is appropriate to impose upon a bailee the responsibility for a loss. This has been explained in some of the more recent Georgia cases. In one case, an employee sued his employer when the employee's tools were stolen out of his truck in his employer's designated parking lot while the employee was working his shift. Goodyear Clearwater Mills v. Wheeler, 49 S.E.2d 184 (Ga. App. 1948). The court imposed liability on the employer but only because "[d]uring the period of time between parking the car in the parking lot and reentering the parking lot to obtain his car, the car of the employee was in the exclusive possession of the employer, and except for the time when shifts were going in and out of the parking lot, was under lock and key of the gate keeper." Id. at 189. In another case, an owner of a small plane sued a hangar operator for damages to his vehicle when he took his airplane from the hangar, flew to another city, left his car at the airport and the car was damaged during his trip. Southern Aero, Inc. v. Jordan, 116 S.E.2d 304 (Ga. App. 1960). The plaintiff paid $35 per month rental for the airplane storage space and "general courtesies such as wiping the windshield, checking the oil and parking and storing the automobile" at the airport when the plaintiff was out of town. Id. at 323. The car was parked by the airport employees and the keys were placed on the same board the airplane keys were kept while the airplane was being stored. The court held the defendant failed to

meet its burden of proof to show it satisfied its duty of care because the defendant "left the duty of caring for these high priced properties to high school boys" who drove and wrecked the plaintiff's car. Id. at 325-326. In another case, a physical therapy client sued for the loss of her jewelry after she took the jewelry off prior to her massage, hung it on the wall and later returned to find the jewelry missing. Newman v. Physical Therapy Associates of Rome, Inc., 375 S.E.2d 253 (Ga. App. 1988). The Georgia Court of Appeals held the client's removal of the jewelry did not create a bailment so as to hold the defendant liable for the loss because it was undisputed that the client retained the right to remove her jewelry at any time without the knowledge of the defendant and there was no exclusive possession of the jewelry by the defendant. Id. at 254. See also Mossie v. Pilgrim Self-Service Storage, 258 S.E.2d 548, 549 (Ga. App. 1979) (storage facility not liable for burglary of storage unit where the property "was placed in a space the access to which was retained by the owners, no negligence was shown to have been committed by the landlord, and no explanation of the manner in which the burglary occurred could be obtained"); Buckley v. Colorado Min. Co., Inc., 294 S.E.2d 665 (Ga. App. 1982) (after musician's equipment was destroyed by a fire at the nightclub where he kept the equipment, a bailment was created because the plaintiff-musician retained no ability to retrieve his equipment when the nightclub was closed); Gooden v. Day's Inn, 395 S.E.2d 876 (Ga. App. 1990) (summary judgment for innkeeper when patron sued for money stolen by inn employee because a safe was provided for the guests, a notice was posted that inn was not liable for items not kept in safe, plaintiff did not

use the safe and defendants had no way of knowing the employee would abscond with the plaintiff's bag of money); Moore v. Harry Norman, Inc., Realtors, 404 S.E.2d 793 (Ga. App. 1991) (summary judgment for realty company on claim of bailment when house on the market was accessible by all agents with a lock-box key).

A bailment was not created in the case at bar for two primary reasons. First, there was no express *or* implied agreement between Plaintiff and Defendant to care for Plaintiff's trailer "in conformity with the purpose of the trust" as contemplated by O.C.G.A. § 44-12-40. Second, there was no actual or constructive delivery of the trailer with actual or constructive possession in TA, exclusive and independent of the Plaintiff, its employee Howell and all other persons. This exclusive possession is essential to a contract of bailment but was absent in this case. No attendant took physical and legal possession of the trailer. No TA employee gave Howell an identifying card to return to an attendant before he could regain possession of the trailer. Howell parked his trailer in the back and it was not parked by any TA employee. Howell retained the right, and could have exercised it, at any time and without any notice to the defendant, to re-enter the parking lot and drive the trailer out of the parking lot. The facts of this case simply do not establish that a bailment was created to impose liability on Defendant for Plaintiff's loss.

Regardless of whether TA was a "depository for hire" or a "naked depository," Defendant established it met either standard of care in this case. Defendant certainly did not act with "gross negligence" but used the "ordinary, reasonable care" others in the business

used considering that, according to the witnesses who were deposed, *no other* truck stop in the country has closed, guarded, gated parking lots for tractor-trailers. Because no other trailers had been stolen from TA, Defendant Atlanta South had no reason to foresee the theft that occurred. However, Plaintiff *did* have reason to suspect trailer theft considering they had two others stolen in the past. Additionally, there was no compensation of any sort contemplated or paid by Plaintiff for parking the trailer in the lot and in fact parking the trailer in the lot unattended for several days was a violation of TA's policy. The fee earned by TA for repairing the tractor did not serve as consideration to create a bailment because TA was not obliged to allow the trailer to park there. Plaintiff South East could have sent another driver for the trailer, the trailer could have been parked and locked in the service bay with the tractor or a lock could have been placed on the trailer securing it so that it could not be moved until Howell was ready to resume his trip. There are a number of types of locks carriers may employ to lock trailers so that they cannot be stolen. One example discussed in the depositions was a "kingpin" lock. In the words of one of the witnesses, "It's pretty much blocking the way of the truck to back up to the trailer so it cannot be stolen."[1] TA offered this type of lock for drivers for about $30. Howell did not have one on his trailer because South East does not have a policy for using these locks. The South East employees testified that placing a lock on a truck is simply an advertisement to thieves that something of value is in the truck and thus is not a deterrent to theft. Based on the statutes and cases

---

[1] T. Sanders Dep. at 34.

interpreting the applicable statutes from this jurisdiction, Plaintiff did not establish a bailee/bailor relationship between it and Defendant Atlanta South.

The few factually analogous cases from other jurisdictions do not support imposing liability either. In Menlo Logistics, a load of goods was stolen when a driver for Western Express left his truck running and unattended at a truck stop. Menlo Logistics, Inc. v. Western Express, Inc., 2005 WL 2334358 (N.D. Cal. Sept. 23, 2005). When the court reviewed the case on summary judgment, the parties stipulated that Western Express was a bailee. Applying bailment standards similar to those applied in Georgia, the court found there was a question of fact precluding summary judgment because the evidence did not establish whether the truck was locked and thus the court could not determine whether Western Express exercised the appropriate standard of care. In M. Bruenger, a tractor-trailer owner sued a truck stop on a bailment claim when a thief stole the tractor-trailer. M. Bruenger & Co., Inc. v. Dodge City Truck Stop, Inc., 675 P.2d 864 (Kan. 1984). When the driver stopped to have the tire repaired, and thought the repair could be made quickly, he left the tractor-trailer with the defendant, unlocked with the keys in the ignition. After the tire was repaired just before midnight, the mechanic left the doors unlocked and the keys in the ignition. Some time later that night the truck was stolen, overturned and totally demolished about forty miles away. Id. at 868. The parties stipulated there was a bailment. After citing bailment principles similar to those applied in Georgia, the Supreme Court of Kansas held the defendant's policy of "leaving the keys how they found them," which in some cases

meant in the ignition of an unlocked car, was negligence as a matter of law. Id. at 870. Because the defendant "introduced no evidence which negated the presumption of its lack of due care, which arose upon the showing that is received the vehicle as a bailee, and that it failed to return the rig when the repair work was completed," the court ordered the lower court to enter judgment for the plaintiffs and against the defendant.

Plaintiff contends that another portion of the bailment statute also applies to impose liability on Defendant: "The relationship of the owner of an automobile and the owner of the garage in which the automobile is stored is that of bailor and bailee. The bailee is bound to use ordinary care for the safekeeping and return of the automobile." O.C.G.A. § 44-12-77. The facts of this case applied to the case law that has developed in this area shows this particular case does not fit within the typical "garage" context. The trailer was not stored *in* a garage and while that is not always dispositive it is important in this case considering the lack of control Defendant had over the trailer in the open, easily accessible parking lot. See Park 'N Go of Georgia, Inc. v. U.S. Fidelity and Guar. Co., 471 S.E.2d 500 (Ga. 1996) (liability imposed on parking lot operator where operator had great degree of control over vehicles while they were parked in the lot by requiring presentation of a claim ticket). Based on the foregoing, no bailment was created and Defendant is entitled to summary judgment on this claim.

### *Negligence Claim*

"Summary judgment is appropriate in negligence cases when, viewing all the facts and

reasonable inferences from those facts in a light most favorable to the plaintiff, the evidence does not create a triable issue on the question of proximate cause." Reid v. Midwest Transp., 607 S.E.2d 170, 174 (Ga. App. 2004) (citation omitted). "Although the question of proximate cause is ordinarily for the jury to decide, plain and indisputable cases may be decided by the court as a matter of law. In such plain cases, the inquiry is whether the causal connection between the defendant's conduct and the injury is too remote for the law to countenance a recovery." Id. (citation omitted). "Generally, an independent, intervening criminal act of a third party, without which the injury would not have occurred, will be treated as the proximate cause of the injury superseding any negligence of the defendant, unless the intervening criminal act is a reasonably foreseeable consequence of the defendant's negligent act." Id. (citation omitted). "Where the evidence plainly and manifestly shows that the injury was caused by the intervening efficient act of a third person, the defendant can not be held responsible for having produced the injury, and the question is then one of law for determination by the court, and not one of fact for the jury." Id. at 175 (citation omitted).

      Plaintiff South East's negligence claim is meritless because the intervening act of the trailer thief was the cause of the loss, not any act or omission by Atlanta South. Prior to this incident a car had been stolen from the parking lot but a trailer had never been stolen from TA. Contrary to Plaintiff's arguments, the fact that there had been reports of theft from the convenience store did not make it reasonably foreseeable that someone would drive up to a

trailer and steal it off the parking lot.  Defendant is entitled to summary judgment on the negligence claim.

**SO ORDERED this 11th day of October, 2006.**

**S/
WILBUR D. OWENS, JR.
UNITED STATES DISTRICT JUDGE**